UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PATRICK SPENCER,

                            Petitioner,

        v.

UNITED STATES OF AMERICA,

                            Respondent.

**MEMORANDUM AND ORDER**

15-CV-1726 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

Patrick Spencer ("Petitioner") petitions pursuant to 28 U.S.C. § 2255 for a writ of habeas corpus vacating his conviction and sentence under 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

## BACKGROUND

Petitioner was charged in a three-count Superseding Indictment with: (1) possession with intent to distribute five grams or more of a substance containing cocaine base and heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) and 841(b)(1)(C); (2) using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). (Superseding Indictment at 1–2, Case No. 9-cr-512, ECF No. 26.) On January 25, 2011, Petitioner was convicted after a jury trial on all three counts. (Jury Verdict, Case No. 9-cr-512, ECF No. 61.) At sentencing, the trial court determined that Petitioner was eligible for a sentencing enhancement under the Armed Career Criminal Act ("ACCA"), due to four prior convictions involving violent felonies. (Gov't Mem. L. in Opp'n to Pet'r's Mot. to Vacate Sentence, ("Gov't Opp'n"), 5, ECF No. 34.) Of these, two were New York state court convictions for attempted armed robbery—in the first and second degree, respectively. (*Id.* at 6–7.) Petitioner was consequently sentenced to a custodial term of 300

months:  60 months on Count One, 60 months on Count Two, and 180 months on Count Three.  (*Id.* at 7; *see also* Judgment Order at 3, Case No. 9-cr-512, ECF No. 101.)

## STANDARD OF REVIEW

Section 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), permits a prisoner who was sentenced in federal court to move the court which imposed the sentence to vacate, set aside, or correct the sentence on the grounds that the sentence:  (1) "was imposed in violation of the U.S. Constitution or the laws of the United States;" or (2) "was entered by a court without jurisdiction to impose the sentence;" or (3) "exceeded the maximum detention authorized by law;" or (4) "is otherwise subject to collateral attack."  28 U.S.C. § 2255; *see also Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (quoting same).  A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence.  *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (citing *Harned v. Henderson*, 588 F.2d 12, 22 (2d Cir. 1978) ("It is, of course, well settled that in federal habeas corpus proceedings the burden of proving a constitutional claim lies with the petitioner and that the nature of that burden is the customary civil one of a preponderance of the evidence.")).

## DISCUSSION

### I.  Petitioner's Conviction for Attempted Armed Robbery in the First Degree

The Armed Career Criminal Act authorizes enhanced sentencing penalties for defendants who are convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g), and who also have three previous convictions for either a "violent felony" or "serious drug offense."  18 U.S.C. § 924(e)(1).  ACCA defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened

2

use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

Petitioner argues that vacatur of his sentence is warranted because his state convictions for first-degree and second-degree attempted armed robbery no longer qualify as ACCA predicates following the Supreme Court's recent holding in *United States v. Taylor*, 142 S. Ct. 2015 (2022). (Pet'r's. Suppl. Mem. Law ("Pet'r's. Mem."), ECF No. 31.) In *Taylor*, the court held that attempted Hobbs Act robbery did not qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) because no element of the offense required proof that the defendant used, attempted to use, or threatened to use force. 142 S. Ct. at 2015, 2021, 2025. ("Congress tasked the courts with a much more straightforward job: Look at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use, or threatened use of force. Following that direction in this case, the Fourth Circuit correctly recognized that, to convict a defendant of attempted Hobbs Act robbery, the government does not have to prove any of those things.").

Here, the Government concedes that Petitioner's conviction second-degree attempted armed robbery does not meet the definition of a violent felony. (Gov't Opp'n, at 6, 10 n.1.) However, the Government stops short of acknowledging that Petitioner is entitled to relief altogether, asserting that his conviction for first-degree attempted robbery remains a crime of violence in the wake of *Taylor*. (*Id*.) The Court agrees.

To determine whether a state law offense fits ACCA's definition of a violent felony, courts employ what is known as the "categorical approach," which evaluates "whether the elements of the statute of conviction meet the federal standard." *Borden v. United States*, 141

S.Ct. 1817, 1822 (2021).  Importantly, the court must look "only to the statutory definitions—i.e., the elements—of a defendant's prior offenses, and not to the particular facts underlying those convictions," meaning that a "prior crime [will] qualify as a predicate offense in all cases or in none." *Descamps v. United States*, 570 U.S. 254, 261, 268 (2013) (internal quotations omitted) (quoting *Taylor v. United States*, 495 U.S. 575 at 601 (1990)).  Where a statute criminalizes multiple acts in the alternative, that statute is "divisible" and requires the application of a "modified categorical approach," under which the court may look at a limited set of documents (such as the indictment, jury instructions, or plea agreement and colloquy) to identify the portion of the statute under which the defendant was charged, and apply the standard categorical approach to that same portion.  *See United States v. Bertrand*, No. 20-CR-547, 2023 WL 22623, at *3 (E.D.N.Y. Jan. 3, 2023) (collecting cases).

Section 160.15 of the New York Penal Code provides that a person is guilty of robbery in the first degree "when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant of the crime:  (1) [c]auses serious physical injury to any person who is not a participant in the crime; or (2) [i]s armed with a deadly weapon; or (3) [u]ses or threatens the immediate use of a dangerous instrument; or (4) [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."  N.Y.P.L. § 160.15.  By extension, a person is guilty of *attempted* armed robbery in the first degree "when, with the intent to forcibly steal property, he or she engages in conduct which tends to do so," and either causes serious physical injury; is armed with a deadly weapon; uses or threatens the immediate use of a dangerous instrument; or displays what appears to be a firearm. *See People v. Osinowo*, 813 N.Y.S. 2d 283, 284 (N.Y. App. Div. 2006) (citing N.Y.P.L. §§ 110; 160.15(4)); *see also People v. Miller*, 87 N.Y.2d 211, 215–217 (1995) (affirming defendant's

4

conviction for attempted first-degree armed robbery where he "possessed the requisite intent to commit a robbery," acted "in furtherance of that intent," and "in the ensuing flight from the foiled robbery . . . caused serious physical injury to the victim.").

Because there are "four different aggravating circumstances, or different ways of committing the offense," the modified categorical approach applies. *Stuckey v. United States*, 878 F.3d 62, 67 (2d Cir. 2017) (applying the modified categorical approach to New York's first-degree armed robbery statute). Here, the parties do not dispute that Petitioner's conviction for first-degree attempted armed robbery was premised on a violation of Section 160.15(4), under which displaying a firearm is the aggravating circumstance. Applying a modified categorical approach, the relevant question is whether an attempted armed robbery that involves the display of a firearm "always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2020. As an apparent matter of first impression in this Circuit, the Court finds that it does.[1]

In *Taylor*, the Supreme Court identified two elements that the Government must prove to secure a conviction for attempted Hobbs Act robbery: (1) that the defendant "intended to unlawfully take or obtain personal property by means of actual or threatened force," and (2) that the defendant "completed a 'substantial step' toward that end." *Id*. at 2020. However, the Court recognized that "there will be cases, appropriately reached by a charge of attempted robbery, where the actor does not actually harm anyone or even threaten harm," such as instances where the defendant "is apprehended before he reaches his robbery victim and thus before he has

---

[1] Whether attempted first-degree robbery under New York law can serve as a predicate felony for ACCA purposes does not appear to have been raised in this Circuit post-*Taylor*. *See United States v. Gibson*, 55 F.4th 153, 158 (2d Cir. 2022) (noting that defendant's appeal "presents fewer issue than might have been raised with respect to the government's proffered predicates for the career-offender enhancement" because he "did not challenge the use of his first-degree robbery conviction as a predicate by raising . . . the issue . . . of whether a robbery attempt can categorically be a 'crime of violence.'").

5

actually engaged in threatening conduct." *Id*. at 2020–21 (quoting Model Penal Code § 222.1 at 14 (1980)).  And, as the Fourth Circuit held in the same case, "an attempt to *threaten* force does not constitute an attempt to *use* force." *United States v. Taylor*, 979 F.3d 203, 209 (4th Cir. 2020), *aff'd* 142 S. Ct. 2015 (2022).

As Petitioner correctly observes, the definition of "forcibly steal[ing] property" under Section 160.00 is broader than it might appear on its face.  (Pet'r's. Mem. at 7.)  Indeed, "[a] person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or *threatens* the immediate use of physical force upon another person." N.Y.P.L. § 160.00 (emphasis added).  Thus, a defendant can be convicted of attempted armed robbery in the first degree if he (1) intends to threaten the use of force upon a person to effect a larceny; (2) engages in conduct that would tend to bring about this result; and (3) displays what appears to be a firearm at some point while engaging in that conduct, but ultimately fails to complete the robbery.

Petitioner asserts that because "completed violations of both statutes encompass forcible stealing by means of threatened force, [] attempted violations of both statutes encompass attempted threats of force—the very conduct that *Taylor* excludes from the elements clause." (Pet'r's Reply Mem. at 3–4, ECF No. 35.)  The Court would be inclined to agree, except that Petitioner fails to appreciate one key distinction between the two statutes:  unlike attempted Hobbs Act robbery, the "display element" of Section 160.15(4) "requires not only that the defendant consciously displayed something that could reasonably be perceived as a firearm, but also that the victim actually perceived the display." *People v. Nelson*, 112 N.Y.S. 3d 372, 374 (N.Y. App. Div. 2019) (internal quotations omitted) (citations omitted).  Thus, there is no circumstance where the Government could prove attempted first-degree robbery under Section

6

160.15(4) without also establishing that the defendant (or his accomplice) threatened the use of force. *See Taylor*, 142 S. Ct. at 2022–23 ("Of course, threats can be communicated verbally or nonverbally—pointing a gun at a cashier conveys a threat no less effectively than passing a note reading 'your money or your life.' But one way or another, some form of communication is usually required."). Accordingly, *Taylor* does not preclude Petitioner's conviction for attempted armed robbery in the first degree from serving as an ACCA predicate.

## II. Petitioner's Conviction for Third-Degree Attempted Sale of a Controlled Substance

Alternatively, Petitioner argues that his prior conviction for attempted criminal sale of a controlled substance in the third degree is not a "serious drug offense," and therefore could not support an ACCA enhancement at sentencing. (Pet'r's Reply Mem. at 10.) Here, the Court agrees.

A "serious drug offense" under ACCA includes "offense[s] under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii). At the same time, however, a state-level offense cannot give rise to a federal sentencing enhancement unless the statutes are a "categorical match"—that is, "the prior state offense must be parallel to or narrower than its federal analog." *United States v. Thompson*, 961 F.3d 545, 549 n.6 (2d Cir. 2020). In other words, if a state statute "criminalizes some conduct that is not criminalized under the analogous federal law," the state conviction cannot support a federal sentencing enhancement. *See United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018).

The Government maintains that Petitioner's controlled substance conviction is a proper ACCA predicate because (1) it was punishable by 15 years' imprisonment at the time of

7

conviction; and (2) "both the commission of the instant offense and the defendant's sentencing for it took place . . . at a time when the New York state controlled substance schedules were no broader than the schedules of the federal Controlled Substances Act." (Gov't Opp'n at 12.) The Government acknowledges that "the 2015 removal of naloxegol from the CSA made some New York controlled substances offense invalid as ACCA predicate," but argues that Petitioner "was sentenced in 2011, four years before the schedules allegedly diverged, and his state controlled substance conviction remains a valid ACCA predicate." (*Id*.) Petitioner, on the other hand, contends that New York's controlled substance schedules encompassed more than the Controlled Substance Act at the time of his federal sentencing, because New York's definition of "narcotic drug" included a more exhaustive list of cocaine derivatives. (Pet'r's Reply Mem. at 12–13.) Petitioner is correct.

Petitioner's conviction for third-degree attempted criminal sale of a controlled substance was premised on an attempt to "knowingly and unlawfully sell[] a narcotic drug." N.Y.P.L. §§ 110.00, 220.39(1). New York law defines a narcotic drug as "any controlled substance listed in schedule I(b), I(c), II(b) or II(c) other than methadone." N.Y.P.L. § 220.00(7). And, Petitioner correctly notes that Schedule II(b)(4) of the New York Public Health Law has included "cocaine and all its isomers" since at least 1997. *See People v. Burnett*, 245 A.D.2d 460 (N.Y. App. Div. 1997) (citing N.Y. Pub. Health Law § 3306(4)). Conversely, "Schedule II of the federal Controlled Substances Act does not include all isomers of coca leaves but only includes the 'optical or geometric isomer.'" *United States v. Boyce*, No. 21-cr-777, 2022 WL 2159890, at *4 (S.D.N.Y. June 15, 2022). This was also the case of the federal drug schedule in effect at the time of Petitioner's sentencing, which limited the scope of "narcotic drug" to "[c]ocaine, its salts,

8

*optical and geometric isomers*, and salts of isomers." 21 C.F.R. § 1300.01 (effective Jan. 4, 2010 to Jan. 26, 2012) (emphasis added).

Against this backdrop, the Court agrees with the "growing list of courts in this Circuit that have held that there is no categorical match between a controlled substance under federal law and a narcotic drug under New York Penal Law." *Boyce*, 2022 WL 2159890 at *6 (collecting cases). Accordingly, Petitioner's conviction for third-degree attempted criminal sale of a controlled substance is not a "serious drug offense" under ACCA, leaving Petitioner with only two valid predicates.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to correct his sentence is GRANTED, and his sentence is VACATED.

SO ORDERED.

Dated: Brooklyn, New York
      June 27, 2023

/s/ LDH
L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge